**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | Case No. 17-\_\_\_\_\_-5-MCR |
|  | : |  |
| AUBURN ARMATURE, INC., *et al.*,[1] | : | Chapter 11 |
|  | : | Joint Administration Pending |
| Debtors. | x |  |

**DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS
363, AND 364(c) AND (d) OF THE BANKRUPTCY CODE (A) AUTHORIZING
DEBTORS TO (i) USE CASH COLLATERAL (ii) OBTAIN POSTPETITION
FINANCING ON A PERMANENT BASIS, (iii) BORROW UNDER SUCH
POSTPETITION FACILITY ON AN INTERIM BASIS, PENDING A FINAL
HEARING ON THE MOTION, (B) PROVIDE PAYMENTS TO CERTAIN
SECURED CREDITORS, AND (C) SCHEDULING AN INTERIM AND FINAL
HEARING ON THE MOTION, PURSUANT TO BANKRUPTCY RULE 4001**

Auburn Armature, Inc. ("AAI"), EASA Acquisition I, LLC ("EASA I"), and EASA Acquisition II, LLC ("EASA II"), as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent:

**JURISDICTION**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Summary of Terms Pursuant to Federal Rule of Bankruptcy Procedure 4001 (c)**

2. Pursuant to Federal Rule of Bankruptcy Procedure 4001(c), the following summarizes certain provisions of the Debtor In Possession Credit Agreement, and the terms of the Proposed Order approving the same:

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Auburn Armature, Inc. [2853]; EASA Acquisition I, LLC [7967]; and EASA Acquisition II, LLC [0374].

| Provision | Location in Credit Agreement | Location in Proposed Order |
|---|---|---|
| Interest Rate: ten percent (10%) | Definitions of Applicable Margin (p. 3), Derived Base Rate (p.6) | |
| Facility terminates on earlier to occur of closing of sale of substantially all of Debtors' assets or an Event of Default that is not cured within any applicable cure period | Definition of Termination Date, p. 18 | |
| Events of Default include: Failure to make timely payments; Failure to pay post-petition Indebtedness; failure of validity of security provided under Agreement; failure of validity of Loan Documents; default under pre-petition Loan Agreement; relief from automatic stay is provided with respect to debt exceeding $25,000; appointment of a Chapter 11 Trustee or examiner; Debtors' filing of motion adverse to interests of Lender; filing of a plan or disclosure statement that does not provide for payment in full of Obligations owed to Lender; termination of services of Chief Restructuring Officer | Article VII (pp. 45-48) | |
| Liens: Senior priming lien under Section 364(c)&(d), excluding only Permitted Liens on all of Debtors' assets | Section 9.3, pp. 53-54. | |
| Borrowing Limit: Determined as a percentage of the value of the Debtors' accounts receivable and inventory | Article I, Definition of "Borrowing Base", p. 4 | |
| Borrowing Conditions: lack of default; entry of orders approving Credit Agreement and use of cash management system; execution of loan documents; approval by Lender of timetable for sale of substantially all of Debtors' assets. | Article IV, pp. 27 – 30 | |
| Automatic stay terminated upon Event of Default and expiration of cure period, if any. | Article VIII, Section 8.1, pp. 48 – 49. | |
| Non-bankruptcy law perfection requirements waived | | Paragraph 13, p. 21 |
| Liens determined to be valid if no challenge filed within 10 days of expiration of Investigation Period | | Paragraph 9, p. 13 |
| Waiver of right to seek or event of default if collateral surcharge is sought | Section 7.19, p. 47 | Paragraph 11, p. 17 |

**BACKGROUND**

3. On the date hereof (the "Commencement Date"), each of the Debtors commenced a voluntary case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. AAI is a New York corporation which has been in business for nearly seventy (70) years, serving as an electrical products distributor, manufacturer, and service organization. EASA I and EASA II are Delaware limited liability companies of which AAI is the sole member. EASA I and EASA II were formed to acquire the assets of unrelated companies in 2014.

5. AAI is owned by Electrical Supply Acquisition, Inc. ("ESA"). ESA was formed in 2012 by a prior owner of AAI and by DeltaPoint Capital IV, L.P. and DeltaPoint Capital IV, (New York) L.P.

6. The Debtors operate out of six (6) locations in New York State. These locations are: (i) 70 Wright Circle, Auburn, NY 13021; (ii) 875 Broadway, Albany, NY 12207; (iii) 161 North Jensen Road, Vestal, NY 13850; (iv) 75 Allied Drive, Cheektowaga, NY 14227; (v) 62 Marway Circle, Rochester, NY 14624; and (vi) 6500 New Venture Gear Drive, East Syracuse, NY 13057.

7. For the fiscal year ended December 31, 2015, ESA, on a consolidated basis with AAI, EASA I, and EASA II (ESA, AAI, EASA I, and EASA II are collectively referred to herein as the "Borrowers"), reported net sales of approximately $57 million and net losses of approximately $2 million. As of the Commencement Date, the Debtors employed approximately 116 employees.

8. The Debtors have filed these cases in order to seek approval of a sale of substantially all of their assets as a going concern pursuant to 11 U.S.C. § 363(f).

## RELIEF REQUESTED

9. By this Motion, the Debtors request authorization pursuant to Sections 363 and 364(c) and (d) of the Bankruptcy Code, and Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (A) authorizing Debtors to (i) utilize cash collateral, (ii) obtain post-petition financing on a permanent basis, (iii) borrow under such postpetition facility on an interim basis, pending a final hearing on the Motion, (B) grant adequate protection to certain secured creditors, and (C) schedule hearings pursuant to Rule 4001(b) and (c) of the Bankruptcy Rules.

**Prepetition Funding of the Debtors' Operations**

10. Prior to the Commencement Date, the working capital needs of the Borrowers were met primarily through certain credit facilities advanced by KeyBank, National Association ("Key"), Patriot Capital II, LP ("Patriot"), DeltaPoint Capital IV, LP ("DeltaPoint") and DeltaPoint Capital IV (New York), LP ("Delta – NY") (DeltaPoint and Delta – NY are collectively referred to as "Delta").

11. Key is owed approximately $5 million and is secured by a first priority lien (excluding certain limited inventory and equipment subject to purchase money financing) on essentially all of the Borrowers' assets. Patriot is owed approximately $6 million and is secured by a second priority lien on essentially all of the Borrowers' assets. Delta is owed approximately $2.5 million and is secured by a third lien on essentially all of the Borrowers' assets.

**The Debtors' Proposed Postpetition Financing Arrangements**

12.     The Debtors urgently require working capital to maintain their operations and businesses during the Chapter 11 process.  Indeed, in the absence of available working capital, the Debtors would be forced to cease their operations and constrained to discontinue service to their customers.  Any significant disruptions of the Debtors' ordinary course operations due to a lack of sufficient funding would be devastating at this critical juncture.  The inability of the Debtors to obtain sufficient operating liquidity and to meet their postpetition obligations on a timely basis may result in a permanent and irreplaceable loss of business, causing a loss of value to the detriment of the Debtors, the creditors of the Debtors' estates, and the loss of 116 jobs.

13.     The Debtors have determined, in the exercise of their sound business judgment, that it is critical to their sale efforts to obtain a postpetition credit facility that provides the Debtors with the ability to utilize a revolving line of credit provided by Key.  The Debtors concluded that debtor in possession financing with Key provides the best opportunity for uninterrupted access to critical working capital and liquidity needs throughout these Chapter 11 cases.

14.     Under the proposed DIP Credit Agreement, Key will provide a revolving line of credit facility, advances under which will be secured by first priority priming liens under 11 U.S.C. §§ 364(c) and (d), and will be entitled to superpriority administrative expense treatment having priority over all other administrative expenses specified in 11 U.S.C. §§ 503(b), 506(c), and 507.

15.     Prior to the Commencement Date, the Debtors engaged in good faith and extensive, arm's-length negotiations with the Key.  These negotiations culminated in an agreement to provide postpetition financing to the Debtors on the terms and conditions set forth

in (i) that certain Debtor In Possession Credit Agreement (the "DIP Credit Agreement"), among the Debtors, as borrowers, and Key as DIP Lender, and (ii) the proposed form of interim order approving the DIP Credit Agreement (the "Interim DIP Order," and, with the DIP Loan Agreement and all related documents, collectively, the "DIP Financing Documents").  Copies of the DIP Credit Agreement and the proposed Interim DIP Order are annexed hereto as Exhibits "A" and "B," respectively.

**The Proposed DIP Financing Arrangement Should Be Authorized**

16. The Debtors' working capital needs can only be satisfied if the Debtors are authorized to utilize credit of up to $4 million under the DIP Credit Agreement pending a proposed sale of the Debtors' assets.  A budget reflecting the Debtors' financing requirements is attached hereto as Exhibit "C".  The credit provided under the DIP Loan Agreement will enable the Debtors to continue operating on a "business as usual" basis, so that they can pay their employees and operate their businesses in the ordinary course to preserve and enhance the value of their assets and enterprise for the benefit of all parties in interest.  The availability of credit under the DIP Credit Agreement will provide outside parties with a measure of confidence in the Debtors that will enable and encourage them to maintain or perhaps resume ongoing credit relationships with the Debtors, and promote efforts toward effectuating the Debtors' successful sale.

17. The terms and conditions of the DIP Credit Agreement are fair and reasonable, and were negotiated by the parties in good faith and at an arms'-length.  Accordingly, Key as the DIP Lender, should be accorded the benefits of Section 364(e) of the Bankruptcy Code in respect of such agreement.

**The Interim Approval Should Be Granted**

18.     Rules 4001(b) and 4001(c) of the Bankruptcy Rules provide that a final hearing on a motion to use cash collateral pursuant to Section 363 and to obtain credit pursuant to Section 364 may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

19.     Pursuant to Bankruptcy Rules 4001(b) and 4001(c), the Debtors request that the Court (i) conduct an immediate preliminary hearing on the Motion (the "Preliminary Hearing"), (ii) authorize the Debtors to use cash collateral in an amount up to $1.7 million through and including June 6, 2017 pending a hearing on the DIP Credit Facility; (iii) authorize interim use of DIP Credit Facility pursuant to Section 364, in order to (a) maintain ongoing operations, (b) finance the operations of the Debtors, and (c) avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest as a result of inadequate funding, and (iv) and also schedule a final hearing on the DIP Credit Facility.

20.     The Debtors have an urgent and immediate need for cash to continue to operate. The Debtors will be immediately and irreparably harmed absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the Motion (the "Final Hearing").  The availability of such interim loans will provide necessary assurance to third parties of the Debtors' ability to meet its near-term obligations.  In the short-term, if the Debtors are unable to maintain their operations, the opportunity to sell the Debtors' business as a going concern will lost and the jobs of 116 employees will be lost.

21.     The Debtors are unable to obtain unsecured credit or debt allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code in an amount sufficient

and readily available to maintain ongoing operations. Absent interim postpetition financing, the Debtors' objective of prosecuting their Chapter 11 cases and selling their businesses as a going concern, while maintaining value for the benefit of creditors and employees may fail without a fair opportunity to achieve the purposes of Chapter 11. In these circumstances, the granting of the relief requested by the Motion is warranted.

### NOTICE

22. No trustee has been appointed in these Chapter 11 cases. Notice of this Motion has been provided to the United States Trustee for the Northern District of New York, the attorneys for the Debtors' prepetition lenders and proposed postpetition lender, and the Debtors' 20 largest unsecured creditors. The Debtors submit that no other or further notice need be given.

23. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter an order granting the relief requested herein, and such other and further relief as may be just.

Dated:   May 19, 2017         **MENTER, RUDIN & TRIVELPIECE, P.C.**

By:  */s/Jeffrey A. Dove*
Jeffrey A. Dove, Esq. (Bar Roll No. 101532)
*Proposed Counsel for Debtors and*
*Debtors in Possession*
Office and Post Office Address
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1439
Telephone:    (315) 474-7541
Facsimile:     (315) 474-4040