**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

|   |   |
|---|---|
| In re: | Case No. 17-_____-5-MCR |
| AUBURN ARMATURE, INC., *et al.*,[1] | Chapter 11 |
|  | Joint Administration Pending |
| Debtors. |  |

**DEBTORS' MOTION FOR ORDERS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006:  (A) (i) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, SUBJECT TO THE TERMS OF THE ASSET PURCHASE AGREEMENT AND SUBJECT TO HIGHER AND/OR BETTER OFFERS; (ii) AUTHORIZING AND APPROVING A CERTAIN ASSET PURCHASE AGREEMENT WITH AAI ACQUISITION, LLC; AND (iii) AUTHORIZING DEBTORS TO CONSUMMATE ALL TRANSACTIONS RELATED TO THE PROPOSED SALE; (B) APPROVING BIDDING PROCEDURES AND OTHER RELATED RELIEF; AND (C) AUTHORIZING DEBTORS TO ASSUME CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ASSIGN SUCH CONTRACTS AND LEASES TO PURCHASER AAI ACQUISITION, LLC PURSUANT TO 11 U.S.C. §§ 365(a), (b), AND (c) AND BANKRUPTCY RULE 6006(e)(1)**

Auburn Armature, Inc. ("AAI"), EASA Acquisition I, LLC ("EASA I"), and EASA Acquisition II, LLC ("EASA II"), as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (this "Motion") for entry of Orders pursuant to Sections 105, 363, and 365 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") and Rule 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):  (A) (i) authorizing the sale of substantially all of the Debtors' assets to AAI Acquisition, LLC ("Acquisition"), free and clear of all liens, claims, interests and encumbrances, subject to the terms of that certain Asset Purchase

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Auburn Armature, Inc. [2853]; EASA Acquisition I, LLC [7967]; and EASA Acquisition II, LLC [0374].

Agreement dated as of May 15, 2017, as the same was amended by that certain First Amendment to Asset Purchase Agreement dated May 17, 2017, a copy of which is attached hereto as **Exhibit A** (the "Purchase Agreement"), and subject to higher and better offers; (ii) authorizing and approving the Purchase Agreement; and (iii) authorizing the Debtors to consummate all transactions related to the proposed sale; (B) approving the Bidding Procedures and granting other relief; and (C) authorizing the Debtors to assume certain executory contracts and unexpired leases of personal property and to assign such contracts and leases to Acquisition pursuant to Sections 365(a), (b), and (c) of the Bankruptcy Code and Bankruptcy Rule 6006(e)(1). In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory and rule-based predicates for the relief requested herein are Sections 105, 363, and 365 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules.

## BACKGROUND

5. On May 19, 2017 (the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the Northern District of New York (the "Court") separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code commencing the above-captioned Chapter 11 cases.

6. The Debtors remains in possession of their assets and continues to manage and operate its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7. As of the date of this motion, no trustee, examiner or official committee of creditors has been appointed in these cases.

8. AAI is a New York corporation while EASA I and EASA II are Delaware limited liability companies. AAI is the sole member of both EASA I and EASA II. The Debtors operate an electric motor repair service and electrical equipment distribution network. The Debtors' headquarters are in Auburn, New York.

**The Debtors' Equity and Debt Structure**

9. All of AAI's outstanding stock is owned by Electrical Supply Acquisition, Inc., which in turn is owned by DeltaPoint Capital IV, LP and DeltaPoint Capital IV (New York, LP. There is no public market for AAI's securities.

10. The Debtors owe three (3) primary tranches of secured debt, each of which is secured by substantially all of the Debtors' assets. The Debtors owe their first-priority secured lender, KeyBank, National Association ("Key"), the principal sum of approximately $5 million (plus interest, fees and costs) as of the Petition Date. The Debtors owe their subordinated, second-priority secured lender, Patriot Capital II, L.P. ("Patriot") approximately $6.2 million (plus interest, fees and costs) as of the Petition Date. The Debtors owe their junior subordinated, third priority lenders, DeltaPoint Capital IV, LP and DeltaPoint Capital IV (New York), LP the combined amount of approximately $2.9 million respectively (plus interest, fees and costs) as of the Petition Date.

11. The Debtors are and have been in default of various of their obligations to Key, including coverage ratio obligations and EBITDA obligations. The Debtors and Key have entered into a series of Forbearance Agreements in an effort to provide a framework to remedy the defaults and stabilize the Debtors' business. Pursuant to the Forbearance Agreements, the Debtors were obligated to refinance their obligations to Key or enter into an asset sale transaction acceptable to Key. The Debtors' efforts to refinance its debts were unsuccessful.

12. In light of limitations on available funding for the Debtors' operations and the probable low value that would be attained in a liquidation, the Debtors have, in consultation with their lenders, determined that the best interests of creditors, customers, and employees will be served by the expedient marketing and sale of their assets to the buyer or buyers making the highest or best offer or offers, pursuant to the proposed sale procedures that are attached this Motion as <u>Exhibit B</u> (the "Sale Procedures").[2]

13. The Debtors therefore propose to seek the highest or best offer in connection with a sale of substantially all of their assets (collectively, the "Sale Assets"). The Debtors propose to offer the Sale Assets for sale either in one lot or in multiple lots to one or more buyers, as determined by the Debtors prior to the Bid Deadline.

14. In addition to selling the Sale Assets, the Debtors also propose to assume and assign to the buyer(s) certain unexpired leases and executory contracts in accordance with Section 365 of the Bankruptcy Code.

15. In connection with its efforts to arrange a sale of its assets, the Debtors have retained the services of investment banking firm League Park Advisors ("LP") in September

---

[2] Any capitalized terms used but not defined in this Motion shall have the same meanings as ascribed to them in the Sale Procedures.

{34164/31825/JAD/01377447.DOCX}    4

2016. LP has expended considerable effort to solicit offers for the Debtors' assets, and has been successful in obtaining an offer from Acquisition, an entity formed by United Electric Power, Inc. ("UEP").

## RELIEF REQUESTED

16. By this Motion, the Debtors seek the entry by this Court of two (2) orders:

   (a) first, an order (the "Sale Procedures Order"), which incorporates the Sale Procedures described in **Exhibit B**:

   i. providing for a process for interested bidders to submit offers with respect to the Sale Assets;

   ii. approving the form and manner of notice of this Motion and the relief requested herein;

   iii. setting a deadline and approving requirements and procedures for interested parties to submit any competing bids for the Assets (the "Sale Procedures");

   iv. authorizing Acquisition as a "stalking horse" purchaser and approving the form of Purchase Agreement;

   v. authorizing an auction sale of the Assets, if necessary; and

   vi. setting a final hearing date (the "Sale Hearing") to approve the sale of the Assets to the bidder (the "Successful Bidder") submitting the highest or otherwise best offer (the "Successful Bid") acceptable to the Debtors.

   (b) second, the Debtors request the entry of an order (the "Sale Order"):

   i. authorizing and approving the Successful Bid on substantially the terms and conditions set forth in the Purchase Agreement, or such other terms and conditions as may be acceptable to the Debtors;

   ii. authorizing the sale of the Assets to the Successful Bidder;

   iii. authorizing the Debtors to consummate the sale of the Assets to the Successful Bidder; and

   iv. authorizing the Debtors to assume certain identified executory contracts and unexpired personal property leases and to assign such contracts and leases to the Successful Bidder.

## THE PROPOSED SALE OF THE DEBTORS' ASSETS

17. As noted above, the Debtors have operated at a loss over the recent past and are in default of their obligations to Key.

18. The Debtors have determined that it is in the best interests of their estates, their creditors and other parties in interest to sell the Sale Assets. The Debtors' management believes that the approval of the sale is critical to preserving their value for the benefit of all creditors, is necessary to providing AAI's customers assurance that their contracts will be honored, and to preserve jobs of the majority of the Debtors' employees. In light of the financial constraints facing the Debtors and the impact of those constraints on the Debtors' business, employees and customers, the Debtors request that in accordance with Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d), the Sale Order be effective immediately upon entry and not be subject to a 14 day stay.

### The Purchase Agreement

19. The Debtors' and Acquisition's extensive good faith negotiations culminated in the Purchase Agreement, which contemplates the sale of the Sale Assets, in a single integrated transaction. The salient terms of the Purchase Agreement are as follows:[3]

    (a)    <u>The Parties</u>. The Debtors as "Seller" and Acquisition as "Buyer".

    (b)    <u>The Sale Assets</u>. The Sale Assets to be sold pursuant to the Purchase Agreement are described in Section 1.1 of the Purchase Agreement, and consist of substantially all of the personal property owned by Seller.

    (a)    <u>Purchase Price</u>. As described in Section 2.1 and Schedule C of the Purchase Agreement, the Purchase Price is calculated based on a

---

[3] The description of the terms of the Purchase Agreement is intended solely to provide the Court and interested parties with a brief overview of the terms thereof. All capitalized terms not otherwise defined herein have the meaning set forth in the Purchase Agreement.

    percentage of the value of the Seller's accounts receivable, inventory, and fixed assets, plus the assumption of certain liabilities.

  (b) <u>Conditions</u>.  The proposed sale is subject to several conditions set forth in Section 9 of the Purchase Agreement, including: (i) accuracy of Buyer's and Seller's representations and warranties; (ii) performance of covenants and agreements in the Purchase Agreement; and (iii) approval by the Bankruptcy Court and entry of the Sale order.

  (c) <u>Higher and Better Offers</u>.  As set forth in further detail below, the Sale of the Sale Assets is subject to the submission by third parties of higher and/or better offers.

**Proposed Bidding Procedures**

20. By this Motion, the Debtors are seeking (i) approval of procedures to govern the sale process, including approval of a $200,000 break-up fee to Acquisition if it is not the successful bidder and (ii) to establish a hearing date to consider approval of one or more bids that may be received for the Sale Assets.

21. As mentioned above, in September 2016, AAI engaged LP as investment banker, to assist the Debtors to market and sell substantially all of their operating assets to a third party as a going concern.  The Debtors will shortly file an application to retain LP as investment banker in these Chapter 11 bankruptcy cases.

22. With the assistance of its professionals, the Debtors have commenced a process to solicit additional bids for the Sale Assets.  In anticipation of a sale, the Debtors and LP prepared a confidential offering memorandum with descriptions of the Debtors' business and financial projections, and began providing teaser materials to prospective purchasers.

23. LP identified more than 133 potential operating, strategic and financial buyers for the Sale Assets and approached those potential purchasers to solicit their interest in the Sale Assets.  Teaser materials and confidentiality agreements have been sent to 129 potential purchasers.  Upon execution of a confidentiality agreement, interested parties have received and

will continue to receive the confidential information memorandum ("CIM") and will be provided access to a due diligence material with respect to the proposed Sale. To date, approximately 53 interested persons have signed the required confidentiality agreement and have received the CIM.

24. The Debtors, with the assistance of LP and other professionals, intend to market and seek higher or better bids for the Sale Assets pursuant to the terms of the Sale Procedures and to hold an auction accordingly.

25. The Debtors proposes the following dates in connection with this sale process:

   (a) **June 12, 2017**: Deadline for a Qualified Bidder to submit a bid to purchase all or a portion of the Sale Assets;

   (b) **June 12, 2017**: Deadline by which the Debtors shall notify Qualified Bidders whether their bids have been determined to be Qualified Bids;

   (c) **June 13, 2017**: Auction to be held at 10:00 a.m. at the offices of Menter, Rudin & Trivelpiece, P.C., 308 Maltbie Street, Suite 200, Syracuse, New York 13204;

   (d) **June 15, 2017**: Deadline for filing objections to the sale of the Sale Assets to the Successful Bidder(s); and

   (e) **June 16, 2017**: Hearing to confirm the sale of the Sale Assets to the Successful Bidder(s) to begin at 10:00 a.m. (Eastern Time) before the Honorable Margaret Cangilos-Ruiz, Chief United States Bankruptcy Judge for the Northern District of New York, at the United States Bankruptcy Court, James M. Hanley Federal Building, 100 South Clinton Street, Syracuse, New York.

26. The Sale Procedures are designed to allow for the Debtors' consideration of the Acquisition "stalking horse" bid and other alternative bids, while providing structure to that consideration. Once approved, the Sale Procedures will govern the submission of all bids and the selection or approval of the highest or best offer for the Sale Assets. The Debtors believe the Sale Procedures will produce the maximum recovery for creditors. The Debtors believe that the

Sale Procedures, if approved by the Court, will maximize the likelihood that the bidding process will involve multiple interested parties leading to one or more purchasers for the Sale Assets.

27. Pursuant to the Sale Procedures, Qualified Bidders will be required to enter into an asset purchase agreement to consummate a sale. The Debtors will share a copy of the Acquisition asset purchase agreement with each Qualified Bidder, which the Qualified Bidder then shall use to make its bid, with such modifications to the form as the Qualified Bidder may propose. The proposed asset purchase agreement will designate which of the Debtors' assets will be sold and will provide for the assumption and assignment of those leases and contracts each Qualified Bidder wishes to acquire. In exchange for those assets, a purchaser will pay the Debtors cash and assume certain liabilities as of the closing date. To the extent, however, a purchaser will not be purchasing certain of the Debtors' remaining assets, such remaining assets will be defined as "Excluded Assets" in the asset purchase agreement. The asset purchase agreement will also contain limited representations and warranties by the Debtors.

28. Pursuant to the Sale Procedures (and as described in greater detail below), the Debtors propose to designate Acquisition as the Stalking Horse Bidder for all of the Sale Assets designated in the Acquisition APA. As part of this Motion, the Debtors seek authorization to pay a break-up fee ("Stalking Horse Protection Fee") to Acquisition in the amount of $200,000.

29. Bankruptcy courts are guided by the principles of the "business judgment" rule in evaluating a debtor's decision to agree to a break-up fee.[4] Break-up fees and/or expense reimbursements for purchasers of Chapter 11 debtors and/or their assets constitute appropriate compensation for the risk involved in preparing and proposing a bid, which thereby enhances the

---

[4] *See The Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 658 (S.D.N.Y. 1992); *In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24 (Bankr. S.D.N.Y. 1989).

value of the debtor's estate by attracting initial bids and establishing a minimum standard for competing bids.[5]

30. Outside the bankruptcy context, courts commonly approve break-up fees. Such fees are presumptively appropriate under the business judgment rule and non-bankruptcy courts rarely rule on their propriety.[6] The use of bid protections, including break-up fees, has become an established practice in Chapter 11 asset sales involving the sale of significant assets, because such bid protections enable a debtor to ensure a sale to a contractually committed bidder at a price the debtor believes is fair, while providing the debtor with the potential of obtaining an enhanced recovery through an auction process.[7]

31. The Debtors, exercising their business judgment, believe that the Sale Procedures (including the Stalking Horse Protection Fee) are in the best interest of its estates and creditors and are necessary to preserve and maximize the value of the Sale Assets.

32. The Sale Procedures (attached hereto as **Exhibit B**)**,** the salient terms of which may be summarized as follows:

> (a) Assets: The Assets to be sold are substantially all of the Debtors' assets.
>
> (b) Qualified Bid / Qualified Bidders: In order to ensure that only bidders with serious interest in the purchase of the Assets participate in the bidding process, the Bidding Procedures provide for certain minimal requirements for a potential bidder to become a "Qualified Bidder" and for a bid to purchase the Assets to be a "Qualified Bid", including[8]:

---

[5] *In re Crowthers McCall Pattern, Inc.,* 166 B.R. 908, 913 (Bankr. S.D.N.Y. 1990).

[6] *See Cottle v. Storer Communications, Inc.,* 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't. Stores, Inc.*, 683 F. Supp. 422, 440 (S.D.N.Y. 1988); *Samiens Partners I v. Burlington Indus., Inc*., 663 F. Supp. 614 (S.D.N.Y. 1987).

[7] *See CRTF Corp. v. Federated Dep't. Stores (In re Federated Dep't. Stores)*, 683 F. Supp. 422, 440 (S.D.N.Y. 1988); *Samiens Partners I v. Burlington Indus., Inc. (In re Burlington Indus., Inc.)*, 663 F. Supp. 614, 624-25 (S.D.N.Y. 1987); *In re 995 Fifth Avenue Assoc., L.P.*, 96 B.R. 24 (Bankr. S.D.N.Y. 1989).

[8] As set forth in **Exhibit B** to this Motion, Key shall be deemed a Qualified Bidder and shall not be required to pay a deposit in connection with any credit bid under Section 363(k) of the Bankruptcy Code.

      (i)      The execution of a confidentiality agreement;

      (ii)     Providing the Debtors with certain financial assurances regarding the bidder's ability to close a transaction;

      (iii)    Submission of a purchase agreement marked to show changes from the Purchase Agreement with Acquisition; and

      (iv)    Submission of a letter to the Debtors stating that (a) the potential bidder is prepared to enter into and consummate the transactions in accordance with the terms of the marked purchase agreement after the Bankruptcy Court's approval of the Sale Order; and (b) such potential bidder's offer is irrevocable until the date that is twenty (20) days after the conclusion of the Sale Hearing.

(c)   Bid Deadline:  The Bidding Procedures provide for a bid deadline of June 12, 2017 (the "Bid Deadline").

(d)   Due Diligence:  The Bidding Procedures permit all potential bidders who have signed confidentiality agreements to participate in the due diligence process through June 9, 2017.

(e)   Selection of the Qualified Bids:  As soon as practicable after the Bid Deadline, the Debtors, in consultation with their professionals, Key, and any committee appointed in these cases, shall review each bid submitted and determined which bidders are qualified to participate in the Auction ("Qualified Bidders"), and shall provide notice of same to all persons submitting bids.

(f)   Auction:  If one or more Qualified Bids, other than Acquisition's, are received by the Sellers, an Auction shall be held on June 13, 2017 at 10:00 a.m. at the offices of Menter, Rudin & Trivelpiece, P.C., 308 Maltbie Street, Suite 200, Syracuse, New York, or such other time and/or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids with respect to the Assets subject to Auction.

At the Auction, Qualified Bidders, including Acquisition, will be permitted to increase their bids (such increased Qualified Bid, a "Qualified Overbid"), provided that such initial Qualified Overbid(s) shall provide a benefit to the estate of at least $200,000 more than the Acquisition Bid, and succeeding bids must be in increments of at least $50,000.00.

The Auction shall not conclude until each Qualified Bidder has had the opportunity to submit a Qualified Overbid with full knowledge of the existing highest bid.

(g)   The Sale Hearing:  The Debtors request that the Court schedule the Sale Hearing for 10:00 a.m. on June 16, 2017.  At the Sale Hearing, the

{34164/31825/JAD/01377447.DOCX}           11

Debtors will seek entry of an order, among other things, authorizing and approving the sale of the Assets to the Successful Bidder, as determined by the Debtors.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid or Qualified Overbid with respect to the Assets as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid with respect to the Assets and the Sellers shall effectuate such sale without further order of the Bankruptcy Court.

(h)  Reservation of Rights:  The Debtors reserve all rights to terminate the sale process at any time if the Debtors determine, in their business judgment and following consultation with their professionals, Key, and any committee appointed in this case, that the sale process will not maximize the value of their bankruptcy estates.  In addition, the Debtors reserve all rights not to submit any bid which is not acceptable to the Debtors for approval to the Bankruptcy Court.  Debtors shall further have the right to amend the Bidding Procedures or impose such other terms and conditions with respect to the Bidding Procedures which Debtors determine, in their business judgment, are necessary for Debtors to fulfill their fiduciary duties, provided that such modifications are not inconsistent with any Bankruptcy Court order, including the Bidding Procedures Order.

33. Similar procedures have been employed successfully in the disposition of assets in other cases. *See e.g. In re Peak Resorts, Inc.,* Case No. 12-31471 (Bankr. N.D.N.Y. February 28, 2013); *In re The Albert Lindley Lee Memorial Hospital,* Case No. 09-30845 (Bankr. N.D.N.Y. April 21, 2009); *In re Northeast Biofuels, LP,* Case No. 09-30057 (Bankr. N.D.N.Y. March 20, 2009); *In re Peters Groceries, Inc.*, Case No. 03-60668 (Bankr. N.D.N.Y. November 15, 2004).

**Assumption and Assignment of Executory Contracts and
Unexpired Personal Property Leases**

34. The Debtors are parties to certain executory contracts and unexpired leases of real and personal property, certain of which are listed on **Exhibit C** annexed hereto (the "Contracts and Leases").

35. The Debtors have evaluated each of the Contracts and Leases in the context of the Bankruptcy Code. In the exercise of its business judgment, and due to the desire of Acquisition to continue operating the Debtors' business, the Debtors have determined that the Contracts and Leases listed on Exhibit C are necessary to the proper continued operation of the business and their assumption and assignment to Acquisition is beneficial to its estate.

36. The Debtors, therefore, seek to assume and assign the Contracts and Leases listed on Exhibit C hereto pursuant to Sections 365(a), (b), and (c) of the Bankruptcy Code.

37. There are various amounts of pre-petition arrears that have accrued in connection with the Contracts and Leases and under the terms of the Acquisition Sale Agreement. Acquisition is assuming the liability to pay for certain of the cure costs as set forth in Sections 1.3 and 1.4 of the Acquisition Sale Agreement. The Debtors are responsible for paying the cure cost arising from unexpired leases of non-residential real property, if any. .

38. This motion complies with Bankruptcy Rule 6006(e)(1) because all of the Contracts and Leases listed on Exhibit C will be assigned to a single assignee, the purchaser of the Sale Assets.

**BASIS FOR RELIEF**

**The Proposed Sale is in the Best Interests of the Debtors,
Their Creditors and Their Estates**

39. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §363(b)(1). A debtor in possession is given these rights by Section 1107(a) of the Bankruptcy Code. *See* 11 U.S.C. §1107(a). Moreover, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

40. Courts have uniformly held that approval of a proposed sale of property pursuant to Section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. See *e.g., In re Trans World Airlines, Inc.*, Case No. 01-00056, 2001 WL 1820326, at *11 (Bankr. D. Del. April 2, 2001); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the pre-confirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a Section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a *good business reason* for completing the sale and the transaction is in good faith.") (emphasis added).

41. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See e.g., In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143 (3d Cir. 1986); *Cmte. of Equity Security Holders v. The Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983). In fact, the paramount goal in any proposed sale of property is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *The Official Committee of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*) 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy

law that the...[debtors'] duty with respect to such sales is to obtain the highest price or greater overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

42.  Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See In re Montgomery Ward Holding Corp.*, Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997); *In re Fruehauf Trailer Corp.*, Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *In re Integrated Res.*, 147 B.R. at 659 (such procedures are created to "encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets...[should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

43.  The Debtors submit that the proposed sale to Acquisition or any other Successful Bidder satisfies the "sound business reason test" and represents a prudent and proper exercise of the Debtors' business judgment. The Debtors believe that a prompt sale of the Sale Assets is the only way to maximize the value of the Debtors' estates, to preserve jobs and to ensure the continued operations of the Debtors' business.

44.  The Debtors believe that the Bidding Procedures are the best method by which they can obtain the best price for the Sale Assets and provide interested persons with accurate and reasonable notice of the proposed sale. The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for the Sale Assets.

The Bidding Procedures also will enable the Debtors to undertake the auction process in as expeditious a manner as possible, which the Debtors believe is essential to maintaining and maximizing the value of their estates. Finally, the Debtors submit that the price offered by Acquisition for the Sale Assets is fair and reasonable.

45. The Debtors believe that the best way to maximize the value of the Sale Assets is to sell them as a single group, and part of a going concern, as set forth in the Purchase Agreement. While the Debtors are willing to consider the sale of the Sale Assets in separate lots if a Qualified Bid proposes that method, the Debtors believe that the sale of the Sale Assets in separate lots would result in lower proceeds paid to the Debtors' estates and would result in the loss of some, if not all, of the employees' jobs. As such, the offer made by Acquisition was determined by the Debtors in their business judgment to be the best available offer for the Sale Assets and the appropriate stalking horse offer for the Assets.

46. Finally, the Debtors believe that it is in the best interests of their estates to assume and assign the Contracts and Leases to the Successful Bidder in order to ensure the continued operation of the Debtors' business.

47. It is unlikely that any other alternative, other than the sale, will, at this time, provide a higher value for the Sale Assets, which supports the conclusion that the Debtors have exercised their good and prudent business judgment in proceeding with the proposed sale. Accordingly, the sale should be approved. Moreover, as set forth hereinafter, accurate and reasonable notice will be provided to any parties expressing interest with respect to the Sale Assets and to all creditors and other parties in interest in compliance with the Bankruptcy Code and the Bankruptcy Rules.

48. All aspects of the proposed sale have been handled in good faith. The Purchase Agreement is the product of detailed good faith negotiations involving the Debtors, with the aid of their professionals, and Acquisition and its counsel.

**The Proposed Bidding Procedures are in the Best Interests of the Debtors, Their Creditors and their Estates**

49. The Sale Procedures outlined herein are designed to strike a balance between inviting competitive bids and enabling the Debtors to close a sale of the Sale Assets within a reasonable time frame. The Sale Procedures are fair, reasonable and necessary to promote the highest or best sale price, without imposing undue obstacles to the competitive bidding process.

50. The Sale Procedures are a necessary tool to maximize the value of the Debtors' estates and will not unduly hamper the submission of competing bids. Rather, the Bidding Procedures will insure that only parties with (a) a serious and legitimate interest in acquiring the Assets and (b) the financial means to consummate a transaction quickly, will participate in an open Auction process.

51. For the foregoing reasons, the Debtors respectfully submit that this Court should authorize and approve the Sale Procedures pursuant to Section 363(b) of the Bankruptcy Code.

**The Purchase Agreement Should be Approved**

52. Section 363(f) of the Bankruptcy Code[9] permits debtors, with court approval, to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such

---

[9] Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(continued...)

liens, claims, interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

53. In the instant case, the Sale Assets are encumbered by security interests and liens perfected by the secured creditors securing the repayment of obligations totaling approximately $15,000,000.00 as of the Petition Date. In accordance with the terms of the Purchase Agreement, Acquisition will acquire the Sale Assets for cash, and upon information and belief, the secured creditors will consent to the sale of the Sale Assets free and clear of their respective liens. Accordingly, Section 363(f)(2) will be satisfied and the Debtors will be permitted to sell the Sale Assets free and clear of any interest in such property in accordance with the terms of the Purchase Agreement. In addition, the Debtors believe that the consideration being paid under the Acquisition Purchase Agreement exceeds the value of the liens encumbering the Sale Assets, thus also satisfying Section 363(f)(3).

**Purchaser's Good Faith**

54. Pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); *Abbotts Diaries of Penn.*, 788 F.2d at 147.

55. The Purchase Agreement was negotiated in good faith, with the Seller and Buyer represented by their own counsel. The Debtors submit that Acquisition's proposal, as contained

---

(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

in the Purchase Agreement, represents the highest and best offer for the Sale Assets received to date.

56. Accordingly, the Sale Order should include a provision finding that Acquisition or the Successful Bidder for the Sale Assets is a "good faith" purchaser within the meaning of Section 363(m) of the Bankruptcy Code. The Debtors believe that providing Acquisition, or the Successful Bidder, with such protection will ensure that the maximum price will be received by the Debtors for the Sale Assets and closing of the sale will occur promptly.

## PROPOSED SALE NOTICE AND PRIOR MOTIONS

57. Attached hereto as **Exhibit D** is a copy of the Notice (the "Sale Notice") that the Debtors propose to serve upon (i) counsel for Acquisitions; (ii) the Office of the United States Trustee for the Northern District of New York; (iii) counsel for KeyBank, National Association, (iv) counsel for DeltaPoint Capital IV, L.P. and DeltaPoint Capital IV (New York), L.P.; (v) counsel for Patriot Capital II, L.P.; (vi) counsel for any committee appointed in these cases; (vii) all parties to the Contracts and Leases; (vii) all creditors of the Debtors; and (ix) all entities known by the Debtors to have filed a notice of appearance or a request for receipt of Chapter 11 notices and pleadings filed in Debtors' cases as of the notice date below.

58. The Debtors propose to serve the Sale Notice via first class mail upon all designated parties not later than 5:00 p.m. on May 24, 2017. Such notice will provide all parties with more than 21 days' notice of the June 16, 2017 Sale Hearing in compliance with Bankruptcy Rule 2002(a)(2).

59. Under all of the relevant facts and circumstances herein and the nature of the relief requested herein, the Debtors respectfully submit that the form of the proposed Sale Notice should be deemed adequate and sufficient notice of the sale, the Sale Hearing, the Sale

Procedures, and the Motion, and respectfully request that the Court enter an Order approving the form and manner of the Sale Notice.

60. No previous request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court (i) at the conclusion of the initial hearing, enter the Sale Procedures Order approving the Sale Procedures, the form and manner of the Sale Notice and scheduling the Sale Hearing, (ii) at the conclusion of the Sale Hearing, enter the Sale Order to be provided by Debtors authorizing the sale of the Sale Assets to Acquisition, or to such other Successful Bidder that submits a higher and/or better offer for the Sale Assets in accordance with the Sale Procedures, (iii) at the conclusion of the Sale Hearing, enter an order authorizing the Debtors to assume and assign the Contracts and Leases to the Successful Bidder, and (iv) granting the Debtors such other relief as the Court may deem just and proper.

Dated:  May 19, 2017

**MENTER, RUDIN & TRIVELPIECE, P.C.**
*Proposed Counsel for the Debtors and Debtors-in-Possession*

By: */s/Jeffrey A. Dove*
Jeffrey A. Dove, Esq.
Jeffrey D. Eaton, Esq.
Office and Post Office Address
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1439
Telephone:  (315) 474-7541
Facsimile:   (315) 474-4040
Email:        jdove@menterlaw.com
                  jeaton@menterlaw.com