UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Case No. 17-_____-5-MCR |
|  | : |  |
| AUBURN ARMATURE, INC., *et al.*,[1] | : | Chapter 11 |
|  | : | Jointly Administration Pending |
| Debtors. |  |  |

# DECLARATION OF GEOFFREY L. MURPHY
# PURSUANT TO LOCAL BANKRUPTCY RULE 2015-6

I, Geoffrey L. Murphy, declare, pursuant to Section 1746 of Title 28 of the United States Code, that:

1. I am the Chief Executive Officer ("CEO") and President of Auburn Armature, Inc., a New York corporation. Auburn Armature, Inc. ("AAI"), together with EASA Acquisition I, LLC ("EASA I") and EASA Acquisition II, LLC ("EASA II") are debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases. In that capacity, I am familiar with the Debtors' day-to-day operations, businesses, and financial affairs.

2. I have over twenty-five (25) years of experience in the electrical distribution business. In 1991, I graduated from the University of Connecticut with a BS in Communication Sciences. I also have a certificate in finance from the University of Michigan, and a certificate in finance from Harvard Business School of Continuing Education. I have served as the CEO and president of AAI since August of 2015. From February 2012 through August of 2015, I served as the Director of Distributor Sales at Lightolier, a division of Philips, located in Fall River, Massachusetts. From February 2010 through February 2012, I was an RVP at Granite City Electrical Supply, located in Brockton, Massachusetts. I was the President of Columbia Electric

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Auburn Armature, Inc. [2853]; EASA Acquisition I, LLC [7967]; and EASA Acquisition II, LLC [0374].

{34164/31825/AAV/01368090.DOC}                              1

Supply from March 2001 through February 2010. Prior to that, I was the National Sales Manager for KRONE Americas from 1999 through March 2001.

3. I submit this declaration ("Declaration") pursuant to Local Bankruptcy Rule 2015-6 to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of these Chapter cases and in support of (i) the Debtors' petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date"), and (ii) the relief, in the form of motions and applications, that the Debtors have requested of this Court (collectively, the "First Day Pleadings").

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' senior management, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

5. This Declaration is intended to provide a summary overview of the Debtors and these Chapter 11 cases. Sections I through III of this Declaration provide an overview of the Debtors' business and organizational structure, capital structure, and the circumstances giving rise to the commencement of these Chapter 11 cases. Section IV summarizes the relief requested in each of the First Day Pleadings. Section V lists the schedules of information required by Local Bankruptcy Rule 2015-6 and additional schedules attached for the benefit of the Court.

## I.
## The Debtors' Business and Organizational Structure

6. AAI is a New York corporation which has been in business for nearly seventy (70) years, serving as an electrical products distributor, manufacturer, and service organization. AAI is owned by Electrical Supply Acquisition, Inc. ("ESA"). ESA was formed in 2012 by a prior owner of AAI and by DeltaPoint Capital IV, L.P. ("DeltaPoint IV"), and DeltaPoint Capital IV, (New York) L.P. ("DeltaPoint New York" and together with DeltaPoint IV, "DeltaPoint").

7. EASA I is a Delaware limited liability company of which AAI is the sole member. EASA I was formed to acquire the assets of unrelated company in 2014.

8. EASA II is a Delaware limited liability company of which AAI is the sole member. EASA II was formed to acquire the assets of unrelated company in 2014.

9. The Debtors operate out of six (6) locations in New York State. These locations are: (i) Auburn, New York; (ii) Albany, New York; (iii) Vestal, New York; (iv) Cheektowaga, New York; (v) Rochester, New York; and (vi) East Syracuse, New York.

**The Facilities**

10. The Debtors' business operations are conducted at six (6) different facilities located throughout New York state including:

   a. 70 Wright Circle, Auburn, New York 13021 (the "Auburn Facility");
   b. 875 Broadway, Albany, New York 12207 (the "Albany Facility");
   c. 161 North Jensen Road, Vestal, New York 13850 (the "Vestal Facility");
   d. 75 Allied Drive, Cheektowaga, New York 14227 (the "Buffalo Facility");
   e. 62 Marway Circle, Rochester, New York 14624 (the "Rochester Facility"); and
   f. 6500 New Venture Gear Drive, East Syracuse, New York 13057 (the "Syracuse Facility").

11. The Auburn Facility employs sixty-four (64) employees, and serves as the corporate headquarters for the business. Operations at the Auburn Facility include electrical distribution, automation, panel shop and motor repair.

12. The Albany Facility employs six (6) employees. Operations at the Albany Facility include electrical distribution.

13. The Vestal Facility employs eight (8) employees. Operations at the Vestal Facility include electrical distribution.

14. The Buffalo Facility employs twenty-four (24) employees. Operations at the Buffalo Facility include electrical distribution and a motors shop.

15. The Rochester Facility employs five (5) employees. Operations at the Rochester Facility include electrical distribution,

16. The Syracuse Facility employs nine (9) employees. Operations at the Syracuse Facility include electrical distribution.

**Equity Sponsors**

17. The Debtors' primary equity sponsor is DeltaPoint. In the aggregate, the equity sponsors have paid in capital of in excess of $8 million.

**Recent Financial Information**

18. As of March 31, 2017, the Debtors' unaudited financial statements reflected assets totaling approximately $26,040.663.00 and liabilities totaling approximately $23,369,333.00. As of April 28, 2017, the Debtors' assets included cash of approximately $68,248.00 (inclusive of restricted cash), and accounts receivable of approximately $6,147,905.00.

19. For the five-month period that ended March 31, 2017, the Debtors experienced a net loss of approximately $3,175,101.00.

## II.
## Capital Structure and the Secured Loan Facility

20. Prior to the commencement of the cases, the Debtors' working capital needs were primarily met through certain credit facilities advanced by KeyBank National Association ("KeyBank"). KeyBank is owed approximately $4.8 million on a revolving line of credit and approximately $200,000 on a term loan. The KeyBank debt is secured by a first priority lien (excluding certain limited inventory subject to purchase money financing) on essentially all assets of the Debtors.

21. Patriot Capital II, L.P. ("Patriot"), is owed approximately $6.2 million, which is secured by a second priority lien on essentially all of the Debtors' assets.

22. DeltaPoint is owed approximately $2.9 million, which is secured by a third lien on essentially all of the Debtors' assets.

23. KeyBank, Patriot and DeltaPoint have each entered into a series of inter-creditor agreements which address various issues, including lien priorities, rights to payment, and remedies upon the occurrence of a bankruptcy filing by AAI.

**Unsecured Debt**

24. In addition to the foregoing, the Debtors have unsecured debt of approximately $6,136,070.00.

## III.
## Events Leading to the Chapter 11 Cases

25. These Chapter 11 cases have been necessitated in part by numerous factors including a lack of access to additional credit from the Debtors' vendors, declining sales, and

pending legal actions. In addition to those factors, the Debtors have entered bankruptcy to consummate a sale of substantially all of their assets,

26. These Chapter 11 cases are a necessary step to protect the rights of Debtors' stakeholders, and will be utilized to promote a sale of substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code.

## IV.
## Summary of First Day Pleadings

27. The Debtors intend to seek relief from the Court as soon as possible after the Petition Date through each of the First Day Pleadings described below:

| TITLE | PURPOSE OF MOTION |
|---|---|
| Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures ("Joint Administration Motion") | Order administratively consolidating the Debtors' Chapter 11 cases in order to reduce the fees and administrative burden of the Debtors. |
| Application for Order Reducing Time for Notice of Hearing to Consider Various "First Day Motions" (the "Application to Reduce Notice" | This application seeks an order reducing the notice and approving of service for the First Day Pleadings and scheduling the first day hearing. |
| Debtors' Motion for an Order Pursuant to Section 363, 364(c), and (d) of the Bankruptcy Code (a) Authorizing Debtors to (i) Use Cash Collateral, (ii) Obtain Postpetition Financing on a Permanent Basis, (iii) Borrow Under Such Postpetition Facility on an Interim Basis, Pending a Final Hearing on the Motion, (b) Provide Payments to Certain Secured Creditors, and (c) Scheduling an Interim and Final Hearing on the Motion, Pursuant to Bankruptcy Rule 4001 ("Cash Collateral Motion") | Interim and final orders authorizing the Debtors to obtain post-petition financing and to borrow under such facility to continue its business operations. |
| Motion Pursuant to Sections 105(a), 363(c), and 364(a) of the Bankruptcy Code for Authorization to (i) Continue to Operate the Cash Management System, (ii) Maintain Existing Bank Accounts and Business Forms, and (iii) Waive Requirements of Section 345(b) of the Bankruptcy Code ("Cash Management Motion") | Authorization to use existing bank accounts and cash management systems is requested. |

| TITLE | PURPOSE OF MOTION |
|---|---|
| Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing Payment of Wages, Compensation, and Employee Benefits ("Wage Motion") | An order authorizing the Debtors to pay prepetition wage claims and continue existing employee benefit programs is requested. |
| Motion Pursuant to Sections 105(a) and 541 of the Bankruptcy Code for Authority to Pay Prepetition Sales and Use Taxes ("Tax Motion") | An order authorizing the Debtors to pay prepetition amounts owing in respect of prepetition sales and use taxes. |
| Motion of the Debtors for Entry of an Order (a) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Services to and/or Discriminating Against the Debtors on Account of the Bankruptcy Filing or any Prepetition Amounts Due, (b) Determining that the Debtors' Utilities are Adequately Assured for Future Payment, (c) Establishing Procedures for Requesting Additional Assurance of Payment, and (d) Establishing Procedures for Objecting ("Utilities Motion") | Approval of adequate assurance of payment to utilities, and approval of procedures to object, and approval of procedures to determine the amount of that adequate assurance, is requested. |

28.     The Debtors filed the First Day Pleadings seeking relief that is necessary to enable the Debtors to efficiently administer their estates with minimal disruption and loss of value. The Debtors respectfully request that the proposed relief described in each of the First Day Pleadings be granted as critical to maximizing the value of their estates. I have reviewed each of the First Day Pleadings discussed below and the facts set forth in each of the First Day Pleadings are true and correct to the best of my knowledge and belief based on appropriate reliance on the Debtors' corporate officers and advisers.

29.     <u>Joint Administration Motion</u>:  The Joint Administration Motion will allow the Debtors to jointly administer the bankruptcy cases. Given the integrated nature of the Debtors' operations, joint administration of these Chapter 11 cases will provide significant administrative convenience for the Debtors, their creditors, and the Court. This administrative convenience is achieved without harming the substantive rights of any party in interest.

30. <u>Application to Reduce Notice</u>: The Debtors have also filed the Application to Reduce Notice. Through this pleading, the Debtors seek to reduce the required notice for many of the First Day Pleadings, have the Court approve the form of notice, and schedule the first day hearing for May 23, 2017, at 11:00 a.m. The relief requested through the Application to Reduce Notice is necessary in order to ensure the continuity of the Debtors' business and provide a smooth transition by the Debtors into their Chapter 11 cases. Absent the relief requested through the Application to Reduce Notice, none of the First Day Pleadings will be heard in a timely manner by the Court, and the Debtors will be forced to immediately cease their operations and suffer substantial and irreparable harm.

31. <u>Debtor in Possession Credit Agreement Motion</u>: Through the Debtor in Possession Credit Agreement Motion, the Debtors are seeking to obtain immediate access to use cash collateral and post-petition secured credit. Without authorization from the Court to use cash collateral and obtain credit, the Debtors will be left without a source of working capital and will be unable to operate their business, thereby irreparably damaging the value of the business. The Debtors' business could potentially fail absent access to cash collateral and post-petition credit on an interim basis. Such a failure would adversely impact the Debtors' ability to maintain jobs and their going concern business while they effect a sale of substantially all of their assets.

32. <u>Cash Management Motion</u>: Through the Cash Management Motion, the Debtors are seeking authority to maintain their existing cash management system and bank accounts. The failure to receive such relief could cause catastrophic disruptions in the daily business operations of the Debtors, including the funding of payroll, disbursement and collection activities, and other daily functions. All parties in interest in these cases are better served by

expedient entry of interim relief that allows the Debtors to keep their existing bank accounts and cash management system.

33.  <u>Wage Motion</u>:  The Debtors are seeking immediate authority to pay prepetition wages.  As of the Petition Date, the Debtors employ 116 employees.  These employees are responsible for the daily operations of the Debtors.  The failure of the Debtors to obtain the relief would irreparably impair the employees' morale, dedication, confidence, and cooperation.  Further, such a failure could damage the Debtors' relationship with its employees at a time when the employees support is critical to the success of the Debtors' cases.  The employees should not be required to bear the burden of these bankruptcy cases.  Failure to timely pay the employees could cause them to suffer financial hardship and difficulties.  It is also likely that the failure to continue payment of the employee wages would force otherwise loyal employees to seek new employment.

34.  <u>Tax Motion</u>:  Through the Tax Motion, the Debtors are seeking authority to pay sales and use taxes as they come due, including prepetition taxes.  Absent emergency relief, the Debtors could fall behind on their tax payments and incur late fees and penalties which would harm the creditors of the Debtors.  Further, the taxes collected by the Debtors are likely not property of the Debtors' estates but are trust funds held on behalf of the taxing authorities.

35.  <u>Utilities Motion</u>:  Absent the relief sought through the Utilities Motion, the Debtors could suffer a loss of utility services that would adversely impact their ability to continue as a going concern business.  Such a disruption would damage customer relationships, lower employee morale, and damage the going concern value of the Debtors' business.  It is therefore imperative that interim relief is granted as soon as possible to preserve the value of the Debtors' estates.

## V.
## Information Required by Local Bankruptcy Rule 2015-2

36. Local Bankruptcy Rule 2015-2 requires certain information related to the Debtors, which is set forth below and in the attached schedules.

37. In accordance with Local Bankruptcy Rule 2015-2(a)(2), **Schedule 1** hereto provides a summary of the Debtors' assets and liabilities.

38. In accordance with Local Bankruptcy Rule 2015-2(a)(3), **Schedule 2** hereto is a list of the Debtors' property not in possession, including property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

39. In accordance with Local Bankruptcy Rule 2015-2(a)(4), **Schedule 3** hereto is a list of the premises owned, leased, or held under other arrangement, from which the Debtors will operate its business.

40. In accordance with Local Bankruptcy Rule 2015-2(a)(5), **Schedule 4** hereto provides the location of the Debtors' substantial assets, and the location of their books and records. To the best of my knowledge, information, and belief, the Debtors do not hold any assets outside the territorial limits of the United States that are of more than *de minimis* value.

41. The Debtors intend to continue to operate as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

42. In accordance with Local Bankruptcy Rule 2015-2(b)(1), **Schedule 5** hereto is the estimated amount of the payroll to employees of the Debtors (exclusive of officers, directors, and stockholders) for the 30-day period following the commencement of the Debtors' Chapter 11 cases.

43. In accordance with Local Bankruptcy Rule 2015-2(b)(2), **Schedule 6** hereto lists the amounts to be paid for services for the thirty (30) day period following the filing of the Chapter 11 petitions to the officers and directors of the Debtors, and to Chikol Equities, Inc., the financial advisory firm retained by the Debtors.

44. In accordance with Local Bankruptcy Rule 2015-2(b)(3), **Schedule 7** hereto contains the estimated cash receipts and disbursements and net cash gain or loss for the thirty (30) day period following the commencement of the Debtors' Chapter 11 cases.

45. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Accordingly, I respectfully request that the Court grant all of the relief requested in the First Day Pleadings and such other and further relief as may be just.

Dated: May 18, 2017

GEOFFREY L. MURPHY

## SCHEDULE 1

**SUMMARY OF THE DEBTORS' ASSETS AND LIABILITIES**

**Fill in this information to identify the case:**

Debtor name __**Auburn Armature, Inc.**__

United States Bankruptcy Court for the: __**Northern District of New York**__

Case number (If known): _____

☐ Check if this is an amended filing

Official Form 206Sum
# Summary of Assets and Liabilities for Non-Individuals       12/15

## Part 1: Summary of Assets

1. *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B* .................................................................................................................... $ **0.00**

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B* .................................................................................................................. $ **17,266,259.52**

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B* .................................................................................................................... $ **17,266,259.52**

## Part 2: Summary of Liabilities

2. *Schedule D: Creditors Who Hold Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* at the bottom of page 1 of *Schedule D*............................ $ **14,159,371.10**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 6a of *Schedule E/F*.................................................................................. $ _____

   3b. **Total amount of claims of non-priority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 6b of *Schedule E/F*............................................................ + $ **8,057,196.17**

4. **Total liabilities**...................................................................................................................................................... $ **22,216,567.27**
   Lines 2 + 3a + 3b

## SCHEDULE 2

**DEBTORS' PROPERTY NOT IN THE POSSESSION
OR CONTROL OF THE DEBTORS**

None.

# SCHEDULE 3

## PREMISES OWNED, LEASED, OR HELD UNDER OTHER ARRANGEMENT, FROM WHICH THE DEBTORS WILL OPERATE THEIR BUSINESS

- 70 Wright Circle, Auburn, NY 13021

- 875 Broadway, Albany, NY 12207

- 161 North Jensen Road, Vestal, NY 13850

- 75 Allied Drive, Cheektowaga, NY 14227

- 62 Marway Circle, Rochester, NY 14624

- 6500 New Venture Gear Drive, East Syracuse, NY 13057

# SCHEDULE 4

## LOCATION OF THE DEBTORS' SUBSTANTIAL ASSETS

- 70 Wright Circle, Auburn, NY 13021

- 875 Broadway, Albany, NY 12207

- 161 North Jensen Road, Vestal, NY 13850

- 75 Allied Drive, Cheektowaga, NY 14227

- 62 Marway Circle, Rochester, NY 14624

- 6500 New Venture Gear Drive, East Syracuse, NY 13057

## **SCHEDULE 5**

Pursuant to Local Bankruptcy Rule 2015-6(b)(1) and (2), the following provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors, and stockholders) for the thirty (30) day period following the filing of the Chapter 11 petitions.

| Payments to Employees (excluding officers, directors, and stockholders) | $520,000.00 |
|---|---|

## **Schedule 6**

  Pursuant to Local Bankruptcy Rule 2015-6(b)(1) and (2), the following provides the estimated amount of weekly payroll to the officers, directors, and stockholders for the thirty (30) day period following the filing of the Chapter 11 petitions and the estimated amount to be paid to the financial business consultant retained by the Debtors, for the thirty (30) day period following the filing of the Chapter 11 petition.

| | |
|---|---|
| Payments to Officers, Directors, and Stockholders | $18,077.00 |
| Payments to Financial and Business Consultant | $0.00 |

# SCHEDULE 7

## ESTIMATED CASH RECEIPTS AND DISBURSEMENT
## FOR THE 30 DAY PERIOD FOLLOWING THE COMMENCEMENT DATE

DIP BUDGET

| 5/12/2017 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| **Auburn Armature Inc.** | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
| **DIP LOC Projections** | 5/26/2017 | 6/2/2017 | 6/9/2017 | 6/16/2017 | 6/23/2017 | 6/30/2017 | 7/7/2017 |
| **Cash Receipts** | | | | | | | |
| From AR (<90 Days Old) | 433,162 | 324,871 | 324,871 | 216,581 | 216,581 | 108,290 | 2 |
| AR - Due Date | 46,558 | 60,016 | 1,102,543 | 424,816 | 354,230 | 157,546 | 37,146 |
| Post Filing Sales Projection | - | - | 22,256 | 66,769 | 106,830 | 289,330 | 356,099 |
| **Cash Receipts** | **479,719** | **384,887** | **1,449,671** | **708,166** | **677,641** | **555,167** | **393,247** |
| | | | | | | | |
| **Cash Disbursements** | | | | | | | |
| Vendor Payments | 302,899 | 242,319 | 302,899 | 302,899 | 302,899 | 302,899 | 242,319 |
| IMARK | - | - | - | - | - | - | - |
| Credit Cards | - | - | - | - | - | - | - |
| Payroll & Taxes | 124,000 | 218,000 | 124,000 | 124,000 | 124,000 | 163,000 | 124,000 |
| Freight | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| Bank & Credit Card Fees | - | - | 3,200 | - | - | - | 3,200 |
| Shop Supplies | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 | 4,400 |
| Telephone & Internet | 4,000 | 7,280 | 520 | 246 | 4,000 | 7,280 | - |
| Health Ins & Life & other | - | 53,000 | - | - | - | - | 53,000 |
| Debt Payments - Key Bank | - | 42,000 | - | - | - | - | 42,000 |
| Rent | - | 78,036 | - | - | - | - | 78,036 |
| Utilities | 1,500 | 5,270 | 6,945 | 1,750 | 1,500 | - | 5,270 |
| Insurance | - | 17,867 | - | - | - | - | 17,867 |
| Travel | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 |
| Auto & Fuel | 3,300 | 3,300 | 3,300 | 10,000 | 3,300 | 3,300 | 3,300 |
| Professional Fees | - | - | - | - | - | - | - |
| Other Operating Expenses | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Taxes | 30,000 | - | - | - | 30,000 | - | - |
| **Total Disbursements** | **495,599** | **696,972** | **470,764** | **468,795** | **495,599** | **506,379** | **598,892** |