| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF NEW YORK<br>---------------------------------------------------------- | Hearing Date:  June 13, 2017<br>Hearing Time: 9:00 a.m.<br>Hearing Location: Syracuse, New York |
| In re:<br><br>AUBURN ARMATURE, INC., *et al.*<br><br>---------------------------------------------------------- | <br><br>Case No. 17-30743<br>Chapter 11 |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION
FOR ENTRY OF FINAL ORDER AUTHORIZING DEBTORS TO INCUR POST-
PETITION DEBT AND PROVIDE ADEQUATE PROTECTION**

To: THE HON. MARGARET CANGILOS-RUIZ, CHIEF UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (hereinafter "United States Trustee"), in furtherance of his duties and responsibilities pursuant to 28 U.S.C. § 586, submits this objection to the Debtor's Motion for entry of order authorizing the Debtor to incur post-petition senior secured, super-priority indebtedness, and to provide adequate protection ("Motion") as follows:

**BACKGROUND**

1.     On May 19, 2017, ("Petition Date"), Auburn Armature, Inc. ("AAI"), EASA Acquisition I, LLC  ("EASA I"), and EASA Acquisition II, LLC ("EASA II"), (collectively, the "Debtors"), filed a voluntary chapter 11 petition for relief under Title 11 of the United States Code ("Bankruptcy Code").

2.     Since the Petition Date, the Debtors have continued to operate as debtors in possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

1

3. On the Petition Date, the Debtors filed, among other pleadings, a motion for post-petition financing and certain other relief ("First-Day Motions").

4. On May 23, 2017, the Court conducted hearings on the Debtors' First-Day Motions. With respect to the Motion herein, the Court approved relief sought on an emergency basis, and entered an interim order on May 25, 2017 (the "Interim DIP Order"). A hearing to consider entry of a final order authorizing the Debtors to incur post-petition financing and other related relief has been set for June 13, 2017.

5. The Interim DIP Order included certain stipulations subject to entry of a final order and investigation rights per the terms of the Interim DIP Order and agreed to by the Debtors, a Non-Debtor Guarantor, and Key (the "Stipulations").

6. On June 1, 2017, the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee").

7. For the reasons stated below, the United States Trustee requests that the Court deny the Debtors' Motion.

## Pre-petition Debt Roll-up is Improper

8. The United States Trustee objects to entry of a final order approving Debtors' Motion in that it provides the secured lienholders with a vehicle to convert pre-petition secured debt to post-petition secured debt with additional "superpriority" administrative expense status under Code Section 364(c).

9. As set forth more fully in the Motion and the Interim DIP Order, the Debtors seek authorization to enter into a post-petition financing agreement with senior secured lender KeyBank, National Association ("Key"), consisting of an initial loan commitment to the Debtors in the principal amount of $1,800,000.00, and up to $4 million, plus accruing interest, fees, costs

2

and other charges, in addition to the amount of pre-petition debt owed to Key of nearly $5 million ("DIP Loan Agreement").  The Debtors' proposal is essentially a roll-up of Key's pre-petition debt with the post-petition debt the Debtors now seek to incur.  It is unclear what, if any, "new money" is being provided to the Debtors.

10. If allowed, proceeds from the DIP Loan Agreement will be used to pay pre-petition obligations owed to Key, allowing Key to convert its debt to a post-petition super-priority administrative expense status secured by estate assets.  The repayment of such pre-petition claims will not be subject to the right of the Court to unwind the repayment in the event that there is a timely and successful challenge to the validity, perfection and priority of Key's pre-petition claims.  The United States Trustee objects to such a payment unless the Debtors and Key can demonstrate that it is in the best interest of the creditor body.  *See In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983)(cross-collateralization permitted where it is demonstrated that (i) absent the proposed financing, the business will not survive, (ii) alternative financing is unavailable, (iii) the lender will not accede to less preferential treatment, and (iv) the financing is in the best interest of the general creditor body).

11. In addition, the proposed roll up effectively overrides the ability of the Committee or other parties in interest to challenge the Key's pre-petition claims because they will already have been given super-priority status secured by estate assets, galvanizing Key's position as the sole beneficiary of the proposed sale.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).

12. To obtain post-petition financing under section 364(d) of the Bankruptcy Code, the Debtors must prove that (i) they are unable to obtain unsecured credit; (ii) the proposed credit is necessary to preserve estate assets; and (iii) the terms of the financing are fair, reasonable and

3

adequate. *See In re Ames Dep't Stores*, *Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990). Post-petition financing should only be approved to the extent it is "in the best interests of the general creditor body." *In re Roblin Indus.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985).

13. Financing should not be approved if its primary purpose is to benefit or improve the position of a secured lender. *See In re Aqua Assocs.,* 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) (stating, "credit should not be approved when it is sought for the primary benefit of a party other than the debtor"); *Ames*, 115 B.R. at 39 (stating, "a proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate").

### The Amount of Carve-out Should Include All Administrative Claims and Post Operation Expenses

14. The $10,000 limitation on the Committee's investigation budget is not appropriate. This is a cost of administration that must be accounted for in the budget, and it must be in a sufficient amount to permit a committee to exercise its fiduciary obligation to the estate. *See In re Cuisinarts, Inc.*, 115 B.R. 774, 751 (Bankr. D. Conn. 1990).

15. Moreover, the DIP Loan Agreement and Stipulations provide no cash or financing beyond the sale date, putting the Debtors at risk of administrative insolvency. The United States Trustee submits that this violates the tenets of the Second Circuit standards under *Lionel*.

16. In addition, courts have recognized that chapter 11 relief is not appropriate where there is no realistic possibility that a plan will be confirmed as a result of lenders utilizing the process to arrange a section 363 sale to be followed by a conversion to chapter 7, all while not providing for payment of all chapter 11 administrative expense claims. *See, e.g., In re Encore Healthcare Assocs.*, 312 B.R. 52, 54-55 (Bankr. E.D. Pa. 2004); *In re Fremont Battery Company*,

73 B.R. 277, 279-80 (Bankr. N.D. Ohio 1987); *In re Au Natural Restaurant, Inc.*, 63 B.R. 575, 581 (Bankr. S.D.N.Y. 1986) (need for expedited sale is not a sufficient business justification to sell substantially all of the debtor's assets when the debtor's prospect of proceeding to confirmation and making distributions to unsecured creditors is unlikely).

17. Therefore, it is necessary that a final order require a further carve-out of sufficient funds to cover the costs associated with confirmation of a liquidating plan. Otherwise, the case would be compelled immediately into a conversion to a case under Chapter 7. Without an adequate carve-out, the Motion should be denied.

### Superpriority on Avoidance Actions and Waiver of § 506(c) and Surcharge Rights Under § 552

18. Bankruptcy Code Section 506(c) provides that a debtor-in-possession or trustee "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c).

19. Although the Interim DIP Order provides for a carve-out against Key's security interests and liens, including claims arising under Chapter 5 of the Bankruptcy Code, as well as a limited carve-out for professional fees and U.S. Trustee fees, (the "Carve-out"), as defined in Paragraph 10 of the Interim DIP Order, the maximum amount of the Carve-out is $683,000. In addition, the Carve-out caps professional fees and expenses for a chapter 7 to $10,000 pending entry of a final order. Likewise, the Interim DIP Order provides that only $10,000 of the Carve-out may be used by a Committee in connection with its investigation.

20.     The United States Trustee submits that the proposed Carve-out and its limitations is insufficient, undermines the bankruptcy process, and should be rejected by the Court. Any final order granting the Debtors' Motion should provide a "carve out from a super-priority status and post-petition lien in a reasonable amount designed to provide for payment of the fees of the debtor's and the committees' counsel and possible trustee's counsel in order to preserve the adversary system." *Ames Dep't. Stores*, 115 B.R. at 38.

21.     In addition, the Debtors seek authorization for approval of waivers of Bankruptcy Code Sections 506(c) and 552(b). In this case, there is no question that Key will be the sole beneficiary of the liquidation of estate assets. A waiver of Section 506(c) would eliminate the chance of any meaningful recovery to unsecured creditors and guarantee that the costs of the reorganization will be borne by the estate and unsecured creditors alone.

22.     Such waivers contravene the intent behind Section 506(c) of the Bankruptcy Code. *See, Precision Steel Shearing, Inc. v. Fremont Fin. Corp.* (In re Visual Indus., Inc.), 57 F.3d 321, 325 (3d Cir. 1995) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . . The rule understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate. . . .").

23.     Consequently, the United States Trustee objects to the proposed waiver on the basis of the "equities of the case" exception contained in Section 552(b) of the Bankruptcy Code, which allows the Debtors and other parties-in-interest to assert that equitable considerations justify the exclusion of post-petition proceeds from collateral. Under the circumstances of this case, the "equities of the case" argument should be preserved.

### Onerous Terms

24. The Stipulations and Interim DIP Order provides that upon 5 business days' notice, Key may terminate the Debtors' rights to use cash collateral and exercise its rights against the collateral without prior authorization of the Court, allowing for automatic termination of the stay. Such a provision puts Key in sole control of the case which is inconsistent with fundamental Bankruptcy Code protections.

25. Paragraph 20 of the Interim DIP Order seeks to limit the ability of the Debtors, the Committee and this Court to propose a viable plan of reorganization or liquidation by prohibiting the confirmation of a plan with payment of all claims of the Prepetition Senior Agent and Prepetition Senior Lenders in full. This provision violates the bankruptcy process and should be rejected and should not be included in a final order.

### The Debtor Has Not Met Its Burden

26. A court should approve a proposed debtor-in-possession financing only if such financing "is in the best interests of the general creditor body." *In re Roblin Indus., Inc.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y 1985) (internal citations omitted); see also *In re Tenney Vill. Co., Inc.*, 104 B.R. 562, 569 (Bankr. D.N.H. 1989) ("The debtor's pervading obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries."). In short, the financing's terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit" of a secured creditor. *Tenney Vill.*, 104 B.R at 568.

27. The Debtors have not met their burden to show that (a) the proposed financing is an exercise of sound and reasonable business judgment; (b) the financing is in the best interests

of the estate and its creditors; (c) the transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the debtor's business; (d) the terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor-borrower and proposed lender; and (e) the financing was negotiated in good faith and at arm's length by the debtor, on the one hand, and the lender, on the other hand. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 879-80 (Bankr. W.D. Mo. 2003). *See also In re Mid-State Raceway, Inc.,* 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005) (looking at several factors in considering whether to approve post-petition secured financing, including whether financing is necessary to preserve the assets of the estate).

28. In light of the foregoing, the United States Trustee submits that the terms and conditions of the DIP Loan Agreement and Stipulations are unduly prejudicial to the rights of the estate and unsecured creditors and should therefore be rejected.

### Reservation of Rights

29. The United States Trustee reserves the right to supplement, modify, and amend this Objection in writing or orally at the final hearing.

**WHEREFORE** the United States Trustee requests that the Court deny the Motion, together with any other and further relief the Court may deem just and necessary.

Dated: June 9, 2017
Utica, New York

                Respectfully submitted,
                **WILLIAM K. HARRINGTON**
                **UNITED STATES**
                **TRUSTEE FOR REGION 2**

                By:   /s/ Guy A. Van Baalen
                Guy A. Van Baalen, Esq.

Assistant P. Champion, Esq.
Trial Attorney
105 U.S. Courthouse & Federal Building
Utica, New York 13501
(315) 793-8191

Assistant United States Trustee
Erin P. Champion, Esq.
Trial Attorney
105 U.S. Courthouse & Federal Building
Utica, New York 13501
(315) 793-8191